## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**MARGARITA MEDINA-DIAZ,**

**Plaintiff,**

**v.**                                                    **CIVIL NO. 15-1347 (GAG)**

**TRIPLE-S VIDA INC., BANCO
POPULAR DE PUERTO RICO,**

**Defendants.**

### OPINION AND ORDER

This case involves a claim for long term disability ("LTD") benefits governed by the Employee Retirement Income Securities Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq. brought by Margarita Medina Díaz ("Plaintiff") against Triple-S Inc., and Banco Popular ("Defendants"). (Docket No. 33-1.) Plaintiff's claims stem from Triple-S' decision to suspend her LTD benefits on August 6, 2013. Id.

Presently before the Court are Defendants Banco Popular and Triple-S' motions for summary judgment. (Docket Nos. 56; 58.) Plaintiff replied and cross-moved for summary judgment. (Docket Nos. 68; 69.) Banco Popular and Triple-S both filed consolidated memoranda in opposition to Plaintiff's motion for summary judgment and reply to Plaintiff's opposition to Defendants' motions for summary judgment. (Docket Nos. 93; 94.) Plaintiff sur-replied. (Docket Nos. 108; 109; 111.) Lastly, Banco Popular sur-replied. (Docket No. 112-1.)

Banco Popular moves for summary judgment arguing that Plaintiff's ERISA claims fails as a matter of law because Banco Popular is not the plan administrator of her retirement plan and the LTD policy; copies of both the Retirement Plan document and the LTD policy were furnished to Plaintiff in compliance with established law; Banco Popular had no bearing on Triple-S' decision

**Civil No. 15-1347 (GAG)**

regarding Plaintiff's LTD benefits; and Triple-S has exclusive discretionary powers to interpret the terms of the LTD Policy and make final and finding decisions pertaining to the benefits.  (Docket No. 56.)   Triple-S  moves  for  summary  judgment  arguing  that  Plaintiff  failed  to  exhaust administrative remedies.  (Docket No. 58.)  Plaintiff argues summary judgment should be entered in her favor and the Court should order Triple-S to restore her benefits, impose a penalty under ERISA against both Banco Popular and Triple-S, and grant attorneys' fees in her favor.  (Docket No. 68.)

After reviewing the parties' submissions and pertinent law, the Court hereby **GRANTS** Banco Popular's Motion for Summary Judgment at Docket No. 56, **DENIES** Triple-S' Motion for Summary Judgment at Docket No. 58, **DENIES** Plaintiff's cross-motion for summary judgment at Docket No. 69, and finds as **MOOT** Plaintiff's cross-motion for summary judgment at Docket No. 68.

I.   **Standard of Review**

Summary  judgment  is  appropriate  when  "the  pleadings,  depositions,  answers  to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a).  "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'"  Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).  The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case.  Celotex, 477 U.S. at 325.  "The movant must aver an absence of evidence to support the nonmoving party's case.  The burden then shifts to the

**Civil No. 15-1347 (GAG)**

nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the Court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the Court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the Court may not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Mun. of Mayagüez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

"Cross-motions for summary judgment do not alter the summary judgment standard, but instead simply require [the Court] to determine whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." Wells Real Estate Inv. Trust II, Inc. v. Chardon/Hato Rey P'ship, S.E., 615 F.3d 45, 51 (1st Cir. 2010) (citing Adria Int'l Group, Inc. v. Ferré Dev. Inc., 241 F.3d 103, 107 (1st Cir. 2001)) (internal quotation marks omitted). Although each motion for summary judgment must be decided on its own merits, each motion need not be considered in a vacuum. Wells Real Estate, 615 F.3d at 51 (quoting P.R. American Ins. Co. v.

Civil No. 15-1347 (GAG)

Rivera-Vázquez, 603 F.3d 125, 133 (1st Cir. 2010)) (internal quotation marks omitted); Mercado-Salinas v. Bart Enterprises Int'l, Ltd., 852 F. Supp. 2d 208, 213 (D.P.R. 2012) on reconsideration in part, 889 F. Supp. 2d 265 (D.P.R. 2012).  "Where, as here, cross-motions for summary judgment are filed simultaneously, or nearly so, the district court ordinarily should consider the two motions at the same time, applying the same standards to each motion."  Wells Real Estate, 615 F.3d at 51 (quoting P.R. American Ins., 603 F.3d at 133) (internal quotation marks omitted).

Under ERISA, a beneficiary may bring a civil suit to enforce her rights under the terms of the benefits plan.  29 U.S.C. § 1132(a)(1)(B).  The Court reviews an administrator's decision to deny benefits *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 49 U.S. 101, 115 (1989); see also Gross v. Sun Life Assur. Co. of Can., 734 F.3d 1, 11 (1st Cir. 2013).  If the administrator has discretionary authority, the Court must apply an arbitrary and capricious standard.  Firestone, 49 U.S. at 115.  Under such analysis, the Court is not permitted to independently weigh the evidence.  Leahy v. Raytheon Co., 315 F.3d 11, 18 (1st Cir. 2002).

## II.  Defendants' objections to Plaintiff's statement of facts

### A.  Local Rule 56

As a threshold matter, the Court notes Plaintiff's failure to adhere to proper summary judgment practice in this District Court.  Local Rule 56 governs summary judgment practice before the U.S. District Court of Puerto Rico.  L. Cv. R. 56.  Local Rule 56 requires, in part, that "[u]nless a fact is admitted, the reply shall support each denial or qualification by a record citation as required by subsection (e) of this rule."  L. Cv. R. 56(d).  In addition, Local Rule 56 states: "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations

**Civil No. 15-1347 (GAG)**

as required  by this rule, shall be deemed admitted unless properly controverted." L. Cv. R. 56(e). The First Circuit has made it pellucidly clear that a party, who ignores any provision of Local Rule 56, does so "at their peril." Ruis Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000).  This court and the First Circuit have both held the court will be justified from deeming admitted a party's submitted uncontested facts, where the other party fails to file an opposition admitting, qualifying, or denying such statements.  Fontanez-Nunez v. Janssen Ortho LLC, 447 F.3d 50, 55 (1st Cir. 2006); see also Gonzalez-Rodriguez v. Potter, 605 F. Supp. 2d 349, 357 (D.P.R. 2009).

Plaintiff had the obligation to properly qualify, deny or admit all of Banco Popular and Triple-S' statement of facts.  In order to properly qualify or deny, Plaintiff had to provide specific references to the record that supported her statements.  Plaintiff cannot simply controvert a fact by using inadmissible evidence, speculation, or legal arguments.  Similarly, as to Plaintiff's own statement of uncontested facts, Plaintiff had the obligation to make reference to specific pages or paragraphs of identified record evidence to support her statements.  Plaintiff failed to comply with the local rules in all of these aspects.  In those rare cases where Plaintiff actually provides a citation to the record, there are many instances where the cited material does not support Plaintiff's proposition.

In accordance with Local Rule 56, the Court includes only facts properly supported by accurate record citations.  See L. Cv. R. 56(e).  "The court shall have no independent duty to search or consider any part of the records not specifically referenced in the parties' separate statement of facts."  Id.  The Court will also only entertain facts that are material to the issues at summary judgment.

Civil No. 15-1347 (GAG)

### III.   Relevant Factual and Procedural Background

#### A. Banco Popular's Statement of Facts

Plaintiff worked as an Assistant Branch Manager at Banco Popular's branch in Las Piedras, from July 1989 until March 11, 2005.  (Docket Nos. 56-1 ¶ 2; 69-12 ¶ 1.)  Popular, Inc. is a publicly-owned financial holding company incorporated under the laws of Puerto Rico, and Banco Popular of Puerto Rico is a wholly-owned subsidiary of Popular, Inc.  (Docket Nos. 56-1 ¶ 1; 69-12 ¶ 1.)  During Plaintiff's employment, she received all relevant pension plan documents, including the Summary Plan Descriptions, the LTD policy, and the Employee handbook.  (Docket Nos. 56-1 ¶ 3; 69-12 ¶ 1.)  From March 9, 2004 until March 10, 2005, Plaintiff was absent from her employment on a Non Occupational Disability Leave.  (Docket Nos. 56-1 ¶ 5; 69-12 ¶ 1.)  Plaintiff's employment ended on March 11, 2005, after she exhausted her one-year employment reserve under the Non Occupational Disability Leave.  (Docket Nos. 56-1 ¶ 6; 69-12 ¶ 2.)

##### i.   Retirement Plan

Plaintiff was eligible to participate in Banco Popular's Retirement Plan, a defined employee benefit plan established and entirely sponsored by Banco Popular.  (Docket Nos. 56-1 ¶ 7; 69-12 ¶ 3.)  The Retirement Plan's terms and conditions are included in the Plan document and the relevant Summary Plan Descriptions.  (Docket Nos. 56-1 ¶ 8; 69-12 ¶ 3.)  The Summary Plan Description designates the right of the participant to obtain copies of all documents and information related to the Retirement Plan if requested in writing.  (Docket Nos. 56-1 ¶ 9; 69-12 ¶ 3.)  Article 4.05 of the Retirement Plan states that a "participant who is not entitled to a Normal, Late, Early, or Disability Retirement Benefit hereunder, but who has a Termination of Employment after he has completed at least 5 Years of service shall have a non-forfeitable right to receive a Deferred Vested Retirement Benefit."  (Docket Nos. 56-1 ¶ 10; 69-12 ¶ 3.)  Article 2.02

Civil No. 15-1347 (GAG)

states that a "person's Active or Inactive Participation in the Plan shall cease . . . when distribution of any Normal, Late, Early, Disability, or Deferred Vested Retirement Benefit to which he may be entitled has been completed." (Docket Nos. 56-1 ¶ 11; 69-12 ¶ 3.)

On November 4, 2005, an officer from Banco Popular sent Plaintiff a letter and several accompanying documents, informing her about her eligibility for the Retirement Plan's deferred vested retirement benefits, as well as the payment options she could choose from, including the option of receiving the same in a lump sum payment because it did not exceed $10,000. (Docket Nos. 56-14 ¶ 16; 69-12 ¶ 3.)   Plaintiff was notified that the total amount of her benefits was $8,255.93. (Docket Nos. 56-14 ¶ 17; 69-12 ¶ 8.)  Plaintiff completed and signed the appropriate forms and sent the required documentation to Banco Popular, electing her retirement benefits under the Retirement Plan be rolled over in a lump sum to her qualified Individual Retirement Account ("IRA"), including a spousal consent form signed before a notary public. (Docket Nos. 56-14 ¶ 20; 69-12 ¶ 8.)  Banco Popular complied, and on December 9, 2005, the bank liquidated and paid all of Plaintiff's retirement benefits to her IRA in the lump sum of $8,255.93. (Docket Nos. 56-14 ¶ 21; 69-12 ¶ 9.)  On this date, and pursuant to the Retirement Plan, Plaintiff was no longer a participant or beneficiary. (Docket Nos. 56-14 ¶ 23; 69-12 ¶ 8.)

Plaintiff's attorney sent the Banco Popular "Trusts" Department a letter on April 15, 2014, requesting the plan documents for the Retirement Plan. (Docket Nos. 56-14 ¶ 30; 69-12 ¶ 13.)  In this letter, plaintiff's attorney alleged that he had sent two previous letters on October 8, 2013, and the second one on February 4, 2014, requesting a copy of the Retirement Plan. (Docket Nos. 56-14 ¶ 31; 69-12 ¶ 14.)  During discovery, Plaintiff's attorney did submit a letter dated February 4, 2014, but did not submit any evidence that this letter was ever sent or received by Banco Popular, and also failed to include any copies of the October 8, 2013 letter. (Docket Nos. 56-14 ¶ 31; 69-12

Civil No. 15-1347 (GAG)

¶ 14.)  The first letter that Banco Popular did receive was one dated April 15, 2014, where Plaintiff requested a copy of the Retirement plan.  (Docket Nos. 56-14 ¶ 33; 69-12 ¶ 15.)  On May 7, 2014, Banco Popular's Executive Compensation and Retirement Plan's Department sent a letter via certified mail to Plaintiff's attorney, informing him that the April 15, 2014 letter was the first time that Banco Popular had received the documents' request and attached a copy of said documents. (Docket Nos. 56-14 ¶ 34; 69-12 ¶ 16.)

ii.  <u>LTD Policy</u>

Plaintiff was also eligible for benefits under the LTD policy offered and paid by Banco Popular as part of its fringe benefits.  (Docket Nos. 56-1 ¶ 12; 69-12 ¶ 3.)  These LTD benefits were underwritten by Triple-S.  (Docket Nos. 56-1 ¶ 12; 69-12 ¶ 3.)  Triple-S was the Claims Administrator for the LTD policy from 2000 until 2007, and Popular Inc.'s Benefits Committee was the named Plan Administrator.  (Docket Nos. 56-1 ¶ 12; 69-12 ¶ 3.)  The LTD Policy's claims procedure is as follows: (1) participants file their claims for benefits with Triple-S, (2) Triple-S makes benefit determinations with complete discretion, (3) claimant can appeal, in writing, any of Triple-S' determination within 180 days, by clearly stating the basis for the appeal and providing all relevant evidence regarding the disability; (4) Triple-S will render a final decision with 45 days, unless it requests an extension of time.  (Docket Nos. 56-1 ¶ 14; 69-12 ¶ 3.)

The LTD policy grants Triple-S exclusive discretionary rights to interpret the terms of the insurance policies underwritten for the plan and to make final determinations regarding coverage, as well as to issue, cancel or suspend benefits after determining whether or not an employee is disabled, for those benefit payments that it is responsible for issuing.  (Docket Nos. 56-1 ¶ 15; 69-12 ¶ 6.)  On August 19, 2004, Plaintiff presented a claim for LTD benefits to Triple-S.  (Docket Nos. 56-1 ¶ 24; 69-12 ¶ 8.)  On or about May 8, 2005, Plaintiff received a letter from Triple-S

**Civil No. 15-1347 (GAG)**

notifying her that her claim had been approved.  (Docket Nos. 56-14 ¶ 25; 69-12 ¶ 8.)  Plaintiff received monthly payments from June 2005 until August 2013.  (Docket Nos. 56-14 ¶ 26; 69-12 ¶ 10.)  On or about August 6, 2013, Plaintiff received a letter from Triple-S notifying and explaining why her LTD benefits were reduced, and the monthly payments would be suspended.  (Docket Nos. 56-14 ¶ 27; 69-12 ¶ 8.)  Plaintiff was also informed that she had a right to request an appeal of the LTD benefits reduction and suspension within 180 days, a description of the administrative review process, her right to receive copies of all documents relevant to her benefit claims, as well as the pertinent rules and guidelines from which Triple-S made its decision, and her right to bring suit pursuant to ERISA.  (Docket Nos. 56-14 ¶ 28; 69-12 ¶ 3.)  Plaintiff failed to submit a written request for administrative review and appeal of Triple-S' decision within 180 days after service of the August 6, 2013 letter.  (Docket Nos. 56-14 ¶ 29.)

### B.  Plaintiff's Statement of Facts

Plaintiff worked as an Assistant Branch Manager at Banco Popular until 2004, when she started suffering from fibromyalgia and depression, and as a result had to stop working.  (Docket Nos. 68-13 ¶ 2; 94-1 ¶ 2.)  From March 9, 2004 until March 10, 2005, Plaintiff was absent from her employment on a Non Occupational Disability Leave.  (Docket Nos. 68-13 ¶ 3; 94-1 ¶ 3.)  Her employment with Banco Popular ended on March 11, 2005, after she exhausted her statutory one-year employment reserve.  (Docket Nos. 68-13 ¶ 4; 94-1 ¶ 4.)  Plaintiff maintains that she did not retire or request an early retirement in 2005 when her employment ended.  (Docket Nos. 68-13 ¶ 6; 94-1 ¶ 6.)

Plaintiff maintains the documents related to the Retirement Plan did not warn her that her LTD benefits would be affected in any way if she received the payment from the pension plan, and that the disbursement of the lump sum of $8,255.93 was at the sole discretion of Banco Popular.

Civil No. 15-1347 (GAG)

(Docket Nos. 68-13 ¶ 23; 94-1 ¶ 23.)   Because of her disability, Plaintiff requested and was awarded LTD benefits.   (Docket Nos. 68-13 ¶ 26; 94-1 ¶ 26.)   Plaintiff continued receiving payments until August 13, 2013, when Triple-S suspended her benefits, explaining that under the terms of the LTD policy, her LTD payment had to be terminated on November 28, 2005 when she received the retirement payment in the amount of $8,255.93.  (Docket Nos. 68-13 ¶ 33; 94-1 ¶ 33.)

### C.  Triple-S' Statement of Facts

Plaintiff was entitled to $1,390.50 per month before any deductions under the LTD policy. (Docket Nos. 58-1 ¶ 2; 68-12 ¶ 2.)  Upon a review of Plaintiff's claim file, Triple-S learned that Plaintiff had elected to retire on November 28, 2005, at the age of forty-three (43), this early retirement is considered a "voluntary early retirement."   (Docket Nos. 58-1 ¶ 3; 68-12 ¶ 3.) Because Plaintiff elected to receive a lump sum as her retirement benefits, her LTD benefits would have ceased as of the day of plaintiff's early retirement, which was November 28, 2005.  (Docket Nos. 58-1 ¶ 5; 68-12 ¶ 5.)  Triple-S made that decision given that under the LTD policy, plaintiff's total income cannot exceed her income before disability, and because it did, she was ineligible to receive further LTD benefits.  (Docket Nos. 58-1 ¶ 5; 68-12 ¶ 5.)

Triple-S sent a letter on August 6, 2013, advising Plaintiff that Banco Popular had notified them of her election to retire early, and that this decision had an impact on the LTD benefits she was entitled to after voluntary early retirement.  (Docket Nos. 58-1 ¶ 6; 68-12 ¶ 6.)  Triple-S kept Plaintiff's claim open subject to the terms and conditions of the policy in case her circumstances would change.  (Docket Nos. 58-1 ¶ 8; 68-12 ¶ 8.)  Plaintiff was also notified of her right to request a review of the administrative process by sending a written request within the next 180 days of the receipt of the August 6, 2013 letter.  (Docket Nos. 58-1 ¶ 9; 68-12 ¶ 9.)  On November 15, 2013, Plaintiff's counsel sent a letter to Triple-S requesting a copy of her claim file in order to

Civil No. 15-1347 (GAG)

"appropriately address" what was stated in Triple-S' letter, but Plaintiff's counsel failed to specifically lodge an appeal of Plaintiff's case.  (Docket Nos. 58-1 ¶ 11; 68-12 ¶ 11.)

On February 7, 2014, Triple-S sent plaintiff a letter acknowledging receipt of the November 15, 2014 letter, along with a copy of plaintiff's claim file as requested.  (Docket Nos. 58-1 ¶ 13; 68-12 ¶ 13.)  Through a subsequent letter Triple-S informed Plaintiff that because it had not received any written request, her claim was not under review.  (Docket Nos. 58-1 ¶ 17; 68-12 ¶ 17.)  Plaintiff did not file a written formal request appealing Triple-S' decision to suspend her benefits.  (Docket Nos. 58-1 ¶ 18; 68-12 ¶ 18.)

## IV.   Legal Analysis

### A.  Banco Popular

Banco Popular moves for summary judgment arguing first that it had no duty to furnish the Retirement Plan's documents to Plaintiff because the Plan Administrator is Popular, Inc. and not Banco Popular of Puerto Rico.  (Docket No. 56 at 5.)  Because Plaintiff failed to include Popular, Inc. as a party Defendant, his claim necessarily fails.  <u>Id.</u>  In any case, Banco Popular argues that because Plaintiff was no longer a participant in the Retirement Plan, there was no duty to provide her with the documents.  <u>Id.</u>  Even so, Banco Popular maintains it did in fact furnish the documents less than thirty (30) days after receiving said request.  <u>Id.</u>  Second, Banco Popular maintains that it was Triple-S who made the decision regarding Plaintiff's LTD benefits and Banco Popular is not liable.  <u>Id.</u>  Banco Popular also asserts Plaintiff failed to exhaust administrative remedies.  <u>Id.</u>

#### i.   <u>Failure to provide documents</u>[1]

Plaintiff claims that both Banco Popular and Triple-S violated ERISA by failing to provide her with requested copies of her plan, and the medical and legal documents that supported the

---

[1] Plaintiff failed to oppose Banco Popular's summary judgment motion as to this claim.

Civil No. 15-1347 (GAG)

decision to terminate her LTD benefits. (Docket No. 33-1 at 5.)  Plaintiff claims that she requested the document plan on October 8, 2013.  Id.  Plaintiff asserts that she is entitled to statutory penalties under Section 502 of ERISA, 29 U.S.C. § 1132, because both Triple-S and Banco Popular failed to provide her with plan documentation as required by the statute.[2]  Id.

ERISA requires the plan administrator to furnish a participant with certain plan documents at specified intervals and also upon written request.  See 29 U.S.C. §§ 1021-1025; Watson v. Deaconess Wlatham Hosp., 298 F.3d 102, 112 (1st Cir. 1993).  Plan participants have a cause of action under Section 502(a)(1) against plan administrators who fail to provide documents within thirty (30) days of plaintiff's request.  See 29 U.S.C. § 1132(a)(1)(A); Watson, 298 F.3d at 112. Failure to provide documents triggers Section 502(c), ERISA's penalty provision.  See 29 U.S.C. § 1132(c); Watson, 298 F.3d at 112-13 (rejecting plaintiff's attempt to assert reporting and disclosure violations outside the context of Sections 502(a)(1) and 502(c)).  ERISA's penalty provision provides that a plan administrator "who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant . . . may in the court's discretion be personally liable to such participant . . . ." 29 U.S.C. § 1132(c). ERISA defines a Plan Administrator as:

> (i)  the person specifically so designated by the terms of the instrument under which the plan is operated;
> (ii) if an administrator is not so designated, the plan sponsor; or
> (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

29 U.S.C. § 1002 (16)(A).  Under the plan language of ERISA, a plan participant may recover a penalty only from the plan administrator.  See 29 U.S.C. § 1132(a)(1)(A).  Case law confirms that

---

[2] Plaintiff's amended complaint alleges that Defendants failed to provide documents to which she is entitled under ERISA. See 29 U.S.C. §§ 1021, 1024 (requiring ERISA plan administrators to provide plan participants with information upon request); see id. § 1132(c)(1) (granting court discretion to impose monetary penalty for failure to provide or delay in providing requested plan documents).

Civil No. 15-1347 (GAG)

claims for penalties under ERISA's disclosure provisions are proper only against the plan administrator, not an entity functioning as an insurer and/or claims administrator.  See Stuart v. Metro. Life Ins. Co., 664 F. Supp. 619, 621-22 (D. Me. 1987) (dismissing plaintiff's breach of fiduciary duty claim against insurer for failure to satisfy ERISA Section 102 disclosure obligations), aff'd per curiam, 849 F.2d 1534 (1st Cir. 1988), cert denied, 488 U.S. 968 (1988); accord Moran v. Aetna Life Ins. Co., 872 F.2d 296, 299-300 (9th Cir. 1989); Davis v. Liberty Mut. Ins. Co., 871 F.2d 1134, 1138-39 & n.5 (D.C. Cir. 1989); Hightsue v. AIG Life Ins. Co., 939 F. Supp. 1350, 1360 (S.D. Ind. 1996).

Section 502(c) requires "an affirmative request for information before imposing a duty to respond or statutory penalties, the absence of such request entitles Defendants to judgment as a matter of law."  Colin v. Marconi Com. Sys. Employees' Ret. Plan, 335 F. Supp. 2d 590, 611-12 (M.D.N.C. 2004) (citing Kleinhans v. Lisle Sav. Profit Sharing Trust, 810 F.2d 618, 622 (7th Cir. 1987); Welsh v. GTE Serv. Corp., 866 F.Supp. 1420, 1425 (N.D.Ga. 1994), aff'd, 61 F.3d 32 (11th Cir. 1995); Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1167 (3d Cir. 1990).  If the plan administrator cannot locate this request, "despite their regular business practice of maintaining copies of participant and beneficiary correspondence, [that] can be considered evidence that no such request was made."  Colin, 335 F. Supp. 2d at 611-12 (citing FED. R. EVID. 803(7); In re Apex Express Corp., 190 F.3d 624, 635 (4th Cir.1999) (finding the absence of business records to be evidence of the non-existence of such records)).

The Court has had a very difficult time understanding the factual basis for Plaintiff's claim. In her complaint, she states that she "requested a copy of her plan and of the medical and legal document that supported Triple-S'[ ] and Banco Popular's decision to terminate the benefits she was receiving."  (Docket No. 33-1 at 5.)  Plaintiff maintains she requested the "document plan" on

Civil No. 15-1347 (GAG)

October 8, 2013.  Id.  She states Triple-S delivered some documents on February, 2014, and Banco Popular delivered "its documents" on June 2014.  Id.

Here, the uncontested evidence shows that Popular Inc.'s Benefit Committee was the elected Plan Administrator under both the Retirement Plan and the LTD Policy[3], and for Plaintiff to successfully state a Section 502(a)(1) violation, she had to send written request to Popular Inc.'s Benefit Committee.  Plaintiff has not provided such evidence.  There is no evidence on the record to support Plaintiff's assertion that she requested any documents on October 8, 2013.  Plaintiff's counsel, by way of letter to Triple-S, did request said documents on November 15, 2013.  However, it is uncontested that Plaintiff never made any requests to Popular, Inc.'s Benefits Committee.[4]  Thus, neither Triple-S nor Banco Popular of Puerto Rico can be held liable under Section 502.  Defendants' motion for summary judgment is **GRANTED** as to Plaintiff's first cause of action.

       ii.   <u>Banco Popular's Failure to Intervene in Triple-S' decision to terminate benefits</u>

Plaintiff claims that Banco Popular knew that Triple-S's decision to suspend her benefits was arbitrary and capricious and that it failed to take any steps to revert that decision.[5]  (Docket No. 33-1 at 6.)  Banco Popular maintains it had no duty, obligation or involvement in this decision.  (Docket No. 56 at 15-22.)

---

[3] Plaintiff fails to specify whether she refers to her benefits under the Retirement Plan, or under the LTD policy.  In an abundance of caution, the Court will entertain the claim analyzing Plaintiff's rights under both plans.

[4] Even if the Court decided to entertain Plaintiff's claim as to Banco Popular, it is undisputed that Plaintiff did not submit a written request to Banco Popular for only the Retirement Plan documents until April 15, 2014.  This letter eventually made it to the Executive Compensation & Retirement Plans Department.  The Department furnished the letter on May 7, 2014.  It is also uncontested that Plaintiff's counsel requested a copy of the LTD policy for the first time during a meeting on September 15, 2014, and Banco Popular provided those documents in that same meeting.  Thus, this claim would still fail.

[5] While Plaintiff fails to specify the nature of her claim, the Court assumes that Plaintiff is raising this claim against Banco Popular under Section 502(a)(1)(B) of ERISA.

**Civil No. 15-1347 (GAG)**

1    Plaintiff received the LTD benefits as part of Banco Popular's fringe benefits, which were

2  offered under a Group LTD Policy issued and underwritten by Triple-S.  While the premiums were

3  paid by the employer, Triple-S had the exclusive discretionary right and authority to interpret the

4  LTD policy, and make any decisions as to whether benefits should be cancelled or denied.  This is

5  more so evince by the fact that if Plaintiff wanted to pursue an administrative appeal, she had to

6  file her claim directly with Triple-S.

7    In the First Circuit, the proper party defendant in an action concerning ERISA benefits is

8  the party that controls the administration of the plan. See Terry v. Bayer Corp., 145 F.3d 28, 36

9  (1st Cir. 1998); accord Garren v. John Hancock Mut. Life Ins. Co., 114 F.3d 186, 187 (11th Cir.

10  1997) (per curiam).  If an entity other than the named plan administrator makes the final benefits

11  eligibility determination, then that entity functions as the plan administrator for purposes of an

12  ERISA benefits claim under Section 502(a)(1)(B).  See Law v. Ernst & Young, 956 F.2d 364, 372-

13  73 (1st Cir. 1992) (treating party as plan administrator where it controlled administration of plan);

14  see also Moore v. LaFayette Life Ins. Co., 458 F.3d 416, 438 (6th Cir. 2006) (imposing liability for

15  ERISA benefits on entity acting as final decision-maker with respect benefits eligibility); Mendes

16  v. Jednak, 92 F. Supp. 2d 58, 66 (D.Conn. 2000) (dismissing claim against employer where

17  employer as plan administrator had no involvement in decision to terminate benefits); MacMillan

18  v. Provident Mut. Life Ins. Co., 32 F. Supp. 2d 600, 604-05 (W.D.N.Y. 1999) (dismissing claim

19  against plan administrator because claims administrator, not plan administrator, refused to pay

20  benefits).  But see Ford v. MCI Commc'ns Corp. Health & Welfare Plan, 399 F.3d 1076, 1081-82

21  (9th Cir.2005) (holding claims administrator with full benefits determination authority not proper

22  party defendant in ERISA benefits claim where plan names plan administrator).

23

24

Civil No. 15-1347 (GAG)

In this case, Plaintiff began receiving her LTD benefits from Triple-S as the Claims Administrator on May 18, 2005 until August 6, 2013 when Triple-S decided to suspend the LTD benefits.  The uncontested evidence shows that Banco Popular had no authority over the ters of the LTD policy, or any discretion or authority over Triple-S' decision in regards to Plaintiff's LTD benefits.  Banco Popular is not the plan administrator, and was never in charge of approving, processing, denying, or making determinations regarding Plaintiff's LTD benefits from 2005 until 2013.  The uncontested evidence shows that Triple-S is the sole entity responsible for making determinations in regards to LTD benefits and to decide whether the participant has the right to receive them.

In an attempt to hold Banco Popular liable regardless, Plaintiff argues that Banco Popular failed to inform Triple-S that Plaintiff had not "retired," which would have allegedly made a difference in Triple-S' decision, and that Banco Popular had an affirmative duty to do so.  While not clear from her brief, Plaintiff's argument seems to be that as a "fiduciary," Banco Popular had the duty to inform Plaintiff of material facts.  Yet, Plaintiff fails to provide any evidence to establish that Banco Popular is "fiduciary" within the meaning of ERISA.  Banco Popular, as the plan sponsor, only becomes a "fiduciary" if the plan specifically designates it as such.  See 29 U.S.C. 1102(a)(2) (Fiduciaries are only those entities "named [as fiduciaries] in the plan instrument, or who, pursuant to a procedure specified in the plan [are] identified as fiduciar[ies].").  Alternatively, ERISA provides that:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such

Civil No. 15-1347 (GAG)

plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A).  Thus, the fiduciary duties are only imposed by ERISA to those entities effectively classified as "fiduciaries" or those that act as "functional" fiduciaries.  See Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 18 (1st Cir. 1998).

Plaintiff has simply failed to show that Banco Popular is a "fiduciary," in order to establish liability for the alleged failure to "revert" Triple-S' decision.  As established above, Banco Popular is not the Plan Administrator.  Additionally, Plaintiff has failed to come forth with any evidence that Banco Popular had discretionary authority or control over the LTD policy.  Thus, Plaintiff's attempt to hold Banco Popular accountable for Triple-S' decision to suspend her LTD benefits necessarily fails.  Banco Popular's Motion for Summary Judgment as to this claim is **GRANTED**.

    iii.  Fiduciary Duty to Maintain the Plaintiff Informed of her Benefits

Lastly, Plaintiff claims that Banco Popular as a "fiduciary" failed to comply with their obligation to maintain Plaintiff informed of her benefits.  (Docket No. 33-1 at 7.)  As established above, Banco Popular is not a fiduciary with respect to Plaintiff's benefit plan.  Thus, any argument that as a fiduciary, Banco Popular failed to keep her informed of her benefits, necessarily fails.

Plaintiff also mentions in passing, without providing any authority to substantiate this assertion, that Banco Popular is liable because "she had no alternative than to receive the payment from co-defendant Banco Popular" when she signed up for the Retirement Plan. Id.  Because of this fact, Plaintiff claims that Triple-S' decision "lacks legal grounds." Id. Once again, Plaintiff fails to provide any evidence establishing that she had no other alternative but to accept her retirement benefits, and that this fact, in some way affected Triple-S' decision regarding her LTD benefits.  To the contrary, Plaintiff herself admits that on November 2, 2005, Jose Torres from

**Civil No. 15-1347 (GAG)**

Banco Popular's "Our People Division," sent a letter to Plaintiff with several accompanying documents, informing her of her eligibility for the Retirement Plan's deferred vested retirement benefits, as well as several payment options she could choose from.  (Docket No. 69 at 11.)  All of the evidence provided by Banco Popular shows that back in 2005 when this decision was made, Plaintiff ultimately chose to receive a lump sum payment rolled over to her IRA account.  Plaintiff signed and completed all the required documents, and even included a spousal consent form that was executed with her husband in front of a notary public.

For the reasons above-mentioned, and because Plaintiff failed to establish that Banco Popular is a "fiduciary," Banco Popular's Motion for Summary Judgment as to any claim for breach of fiduciary duty to inform Plaintiff of her benefits is hereby **GRANTED**.  The undisputed facts show that Banco Popular is the party that deserves judgment as a matter of law.  Plaintiff's cross-motion for summary judgment at Docket No. 69 is **DENIED**.

### B. Triple-S

Plaintiff alleges that: (1) Triple-S' decision to suspend her LTD benefits was arbitrary and capricious, and (2) Triple-S' appeals process is a "sham," because it failed to provide her with a detailed description of the administrative process Plaintiff had to follow.  (Docket No. 33-1 at 6-7.)  Triple-S moves for summary judgment asserting Plaintiff failed to exhaust administrative remedies.  (Docket No. 58 at 6.)  Plaintiff opposes summary judgment asserting that she was not able to file for a review because Triple-S failed to provide her with the necessary documents to perfect her review until after her term to file an administrative appeal had expired.  (Docket No. 108 at 17.)

Civil No. 15-1347 (GAG)

i. Exhaustion of Administrative Remedies

A plaintiff asserting an ERISA claim must first exhaust administrative remedies. See Terry v. Bayer Corp., 145 F. 3d 28, 36 (1st Cir. 1998). "ERISA itself does not specifically require exhaustion of remedies available under pension plans, [but] courts have applied this requirement as a matter of judicial discretion." Tarr v. State Mut. Life Assur. Co. of Am., 913 F. Supp. 40, 44 (D. Mass. 1996) (internal citations and quotations omitted). Plaintiff's failure to exhaust administrative remedies can close the door to litigation before this district court. Terry, 145 F. 3d at 40-41.

Triple-S sent Plaintiff a letter on August 6, 2013, notifying her that her benefits were being suspended. In this letter, Triple-S stated that Banco Popular notified them that she had chosen to retire back in November, 2005. According to Triple-S, Plaintiff's decision to opt for the retirement benefits under the Retirement Plan affected the LTD benefits she could receive after voluntary early retirement. Triple-S' letter includes an explanation of the "retirement plan", the acknowledgment that Plaintiff had elected to receive a lump sum of $8,255.93, and explained to her that according to the policy, her monthly LTD benefits were effectively terminated when she opted for the voluntary early retirement back in 2005. Triple-S notified Plaintiff that it would keep her claim open until her circumstances changed. Triple-S further explained that their decision was based on the fact that altogether, her LTD benefits, Social Security and early retirement benefits now exceeded the portion of the income that she generated before her disability. Triple-S then included a break-down of the calculation used to reach their decision. Lastly, Triple-S informed Plaintiff that if she did not agree with their decision, she had the right to ask for an administrative appeal in writing. Triple-S specified the address where Plaintiff had to send that request, and

Civil No. 15-1347 (GAG)

further explained that she had 180 days to file the appeal.  Effectively, Plaintiff had until February 3, 2014 to appeal.[6]

Triple-S further stated that in this written request for appeal Plaintiff had to include the reasons why Triple-S erred in this determination, including any pertinent documents or information related to her benefits.  Triple-S warned Plaintiff that she only had one review. Plaintiff could also, free of charge, specifically request for copies of all documents, records, and information related to her claim, and any regulations, instructions or similar criteria that Triple-S used to reach this determination.

Plaintiff's counsel replied in a letter to Triple-S' Group Claims Department, dated November 15, 2013, where he asserts that Plaintiff had already tried to obtain, through a letter and through phone-calls, a copy of the plan as well as those other documents used by Triple-S to reach their decision.  Counsel acknowledged the 180-day term to appeal, and warned Triple-S that their failure to provide Plaintiff with the required documents may result in the imposition of fines under federal law.  Counsel then once again asked for the relevant documents including records and information pertinent to the claim or denial of benefits.  Counsel also requested a copy of all internal regulations and the protocols used to reach their decision, as well as any other document that Triple-S had in their position.  Plaintiff's counsel made clear that he was making this request

---

[6] Triple-S never specified in its brief when is it exactly that Plaintiff's 180-day period expired.  In their motions, they often refer to this date as sometime in "February, 2014."  (See Docket No. 58 at 3.) ("Because the determination letter was mailed on August 6, 2013, plaintiff's request for review of the decision should have been sent by February, 2014.").  "Neither the governing statute, nor the implementing regulation, 'specify a method of computing time.'"  LeGras v. AETNA Life Ins. Co., 786 F.3d 1233, 1236 (9th Cir. 2015), cert. denied, 136 S. Ct. 1448 (2016) (citations omitted).  Triple-S did not provide the Court with a way to compute this period.  Plaintiff also does not provide any evidence to show when she received the August 6, 2013 letter.  The Court must then compute this period keeping in mind that ERISA seeks to "protect[ ] participants in employee benefits plans."  See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 44 (1987).

Triple-S's letter is dated August 6, 2013.  180-days later would be Sunday, February 2, 2014.  "[W]here the deadline for an internal administrative appeal under an ERISA-governed insurance contract falls on a Saturday, Sunday, or legal holiday, the period continues to run until the next day that is not a Saturday, Sunday, or legal holiday" LeGras, 786 F.3d at 1238.  Thus, Plaintiff had until February 3, 2014 to appeal Triple-S' decision.

Civil No. 15-1347 (GAG)

to "appropriately address what was stated" in Triple-S' August 6, 2013 letter.  Triple-S received Plaintiff's counsel request on November 19, 2013.

Triple-S is correct that Plaintiff's November 15, 2013 letter lacks a written request for review of their determination to suspend Plaintiff's LTD benefits.  There is no evidence on the record that Plaintiff requested an administrative review at any point before February 3, 2014, within the 180-day period.

Thus, in order for Plaintiff's claim to survive, she must persuade the Court that she is exempt from the exhaustion requirement.[7]  There are two exceptions to this rule: (1) that exhaustion would be futile; and (2) where there has been a lack of meaningful access to the review procedures.  See Madera v. Marsh USA, Inc., 426 F.3d 56, 62-63 (1st Cir. 2005); McLean Hosp. Corp. v. Lasher, 819 F. Supp. 110, 119 (D. Mass. 1993).  Plaintiff's third cause of action deals entirely with what she claims was Triple-S' failure to provide her with adequate notice and a fair review of her claim.  Plaintiff alleges that Triple-S' process is a sham, and Triple's reasons for denying her benefits were "unclear, ambiguous, frivolous, and completely lacked content." Plaintiff further stated that Triple-S had acted in "bad faith."  (See Docket Nos. 33-1 at 7.) Plaintiff also alleged that Triple-S did not provide her a copy of the plan on which the decision was based, even though she asked both Triple-S and Banco Popular for any documents used to reach the decision.  Id. ¶¶ 15-16.

---

[7] Defendants argue that Plaintiff is precluded from raising any exception because she waived this defense by failing to raise it in her complaint.  (Docket No. 93 at 13.)  The Court does note that another court has previously dismissed a complaint due to a plaintiff's failure to allege "that seeking administrative remedies would be futile or the remedy inadequate."  Rivera v. Phillips Puerto Rico Core, Inc., Civ. No. 00-1489(JP) 2000 WL 1739310 at *2 (D.P.R. Oct. 30, 2000).  The Court finds that while not stating any affirmative defense explicitly, Plaintiff's amended complaint at Docket No. 33-1 sufficiently puts Defendants on notice that she would invoke either exception.  (See Docket No. 33-1 ¶¶ 15, 16, 27-29.)

Civil No. 15-1347 (GAG)

### 1. *Futility*

A plaintiff asserting futility as an exception to the administrative remedies exhaustion requirement must prove so by a "clear and positive showing." Turner v. Fallono Cmty. Health Plan, Inc., 127 F.3d 196, 200 (1st Cir. 1997). A plaintiff must "show that it is certain that their claim will be denied on appeal, not merely that they doubt an appeal will result in a different decision." Smith, 959 F.2d at 659.

Plaintiff argues that it was futile for her to pursue an administrative appeal because Triple-S was already convinced that Plaintiff had "retired," that she received a retirement pension, that said retirement payment was considered income, and that Triple-S had overpaid. This is precisely the argument that this circuit has deemed insufficient to prove futility. See, e.g., Madera, 426 F.3d at 63 (futility not established by assuming that defendant would not own up to its own unlawful conduct); Drinkwater v. Metro. Life Ins. Co., 846 F.2d 821, 825 (1st Cir. 1988) (review process not meaningless where the insurance company is the one adjudicating the claim and the plaintiffs argued that defendant was biased and could not be objective during the administrative process). Plaintiff cannot just assume that Triple-S had already made up its mind. This is precisely what the administrative process is about—an opportunity for Plaintiff to convince Triple-S that it had erred in its determination to suspend her benefits. See McLean Hosp. Corp., 819 F. Supp. at 122 (appeals process "may be able to prevent premature judicial intervention in the decision-making process by applying some expertise in interpreting the provisions of the plan and in the carrying out of the fiduciary duties.").

Civil No. 15-1347 (GAG)

2.   _Lack of meaningful access to the review procedure_[8]

This exception applies "if the claimant is wrongfully denied meaningful access to the procedures."  McLean Hosp. Corp. v. Lasher, 819 F. Supp. 110, 123 (D. Mass. 1993) (citing DePina v. General Dynamics Corp., 674 F.Supp. at 49 (citing Lieske v. Morlock, 570 F.Supp. 1426, 1429 (N.D.Ill. 1983))).   Triple-S, as the Claims Administrator, has a duty to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review . . . of the decision denying the claim."  McLean Hosp. Corp., 819 F. Supp. at 119; see also 29 U.S.C. § 1133.  ERISA regulations require Triple-S to provide in writing: (1) the reason for the denial; (2) specific references to plan provisions; (3) a description of any additional material necessary to perfect a claim and an explanation why such material is necessary; (4) information concerning the review process; and (5) if an internal rule or other similar criterion was relied up to suspend the benefits, the plan shall provide the specific rule or a statement giving the claimant an opportunity to obtain these rules free of charge upon request. See 29 C.F.R. § 2560.503-1(g).  In order to permit such a review, the claims procedures must "provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, record, and other information relevant to the claimant's claim for benefits."  See 29 C.F.R. § 2560.503-1(h).  Thus, the appeal of adverse benefit determinations must "provide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim." Id.; see also DiGregorio v. Hartford Comprehensive Employee Ben. Serv. Co., 423 F.3d 6, 14-15 (1st Cir. 2005) ("[t]he opportunity to review . . . pertinent

---

[8] Plaintiff frames all of her objections to the alleged faulty appeal process as a "futility" argument.  "We must take care, however, to refrain from focusing on the facial label [Plaintiff] places upon her argument while ignoring its substance."  Brown v. J.B. Hunt Transport Services, Inc., 586 F.3d 1079, 1085 (8th Cir. 2009).  The Court finds Plaintiff's argument is better analyzed under this exception.

Civil No. 15-1347 (GAG)

documents is critical to a full and fair review, for by that mechanism the claimant has access to the evidence upon which the decision-maker relied in denying the claim and thus the opportunity to challenge its accuracy and reliability.").

In Wilczynski v. Lumbermens Mut. Cas. Co., the plaintiff's attorney had advised the employer that "in order to perfect an appeal, it was necessary for them to receive the claim file containing evidence relied upon by [the employer] in terminating benefits."  93 F.3d 397, 403 (7th Cir. 1996).  The employer eventually furnished the requested documents more than three months after the expiration of her appeals' period.  Id.  The Seventh Circuit held that at the very least, the employer was required to provide the plaintiff with the evidence that it had relied upon to make their decision.  Id.  Further, the Court made clear that an employer's failure to provide the plaintiff with the requested information is the "sort of gamesmanship" that "is inconsistent with the mandate of 29 U.S.C. § 1133 and frustrates the salutary policy interests underlying the requirement of administrative exhaustion."  Id.

Similarly in Brown v. J.B. Hunt Transport Services, Inc., the Eight Circuit held that the insurance company's "failure to comply with its duty under § 1133(2) to provide [Plaintiff] with 'a reasonable opportunity . . . for a full and fair review' of [its] decision to discontinue her LTD benefits excuses [Plaintiff's] failure to exhaust."  586 F.3d 1079, 1085-86 (8th Cir. 2009).  The court further held that "[w]ithout the Administrative Record and other requested documents in hand, [Plaintiff] was unable fully and fairly to prepare her appeal."  Id. at 1086.

While Triple-S provided adequate notice on August 6, 2013, by explaining the reasons for its claim determination and notified plaintiff of the administrative review process, and her rights under both the Plan and ERISA, it failed to effectively comply with its own directives and with Plaintiff's right to have a "full and fair" review of her claim.  It is undisputed that Triple-S

Civil No. 15-1347 (GAG)

received on November 19, 2013, Plaintiff's requests for the relevant documents, information, and regulations it used to reach their determination that Plaintiff was no longer eligible for LTD benefits.  Almost three months later, on February 7, 2014, Triple-S finally acknowledged receipt of Plaintiff's letter and sent her some of the documents requested, days after the appeals' term had expired for Plaintiff.

Interestingly, Triple-S argues that the untimely deliver of the documents did not cause Plaintiff any "prejudice" and she is "precluded from arguing that the tardy delivery of the documents prevented her from lodging a request for review because to formally perfect one, she only had to submit a written request challenging Triple-S['] decision; nothing more."  (Docket No. 93 at 18.)  But this is contradicted by Triple-S' own letter warning Plaintiff that "only one review is permitted" and in this one review, she had to indicate why Triple-S' decision was incorrect, and include comments, documents, records or any other information related to her claim for benefits. (Docket No. 61-1 at 6.)  Thus, in order for Plaintiff to receive a "fair and fair review of her claim" and follow Triple-S' own appeals procedure, she was at the very least entitled to receive the documents that Triple-S used to reach its decision within the 180-day period that Plaintiff had to file her appeal.  Thus, the undisputed evidence shows that Plaintiff was denied meaningful access to "a full and fair review" of her LTD benefits claim.  Triple-S' Motion for Summary Judgment at Docket No. 58 is **DENIED**.

ii.  <u>Remedy</u>

Where Triple-S has failed to comply with the procedural requirements of ERISA, it is ordinarily appropriate to remand the case to the plan administrators for a "full and fair review." <u>See</u> 29 U.S.C. § 1133; <u>see also</u> <u>Buffonge v. Prudential Ins. Co. Of Am.</u>, 426 F.3d 20, 31 (1st Cir. 2005) (remand appropriate when "[t]he problem is with the integrity of [the insurance company]'s

Civil No. 15-1347 (GAG)

decision-making process).   The Court must first determine whether the procedural inadequacy prejudiced Plaintiff.  See DiGregorio, 423 F.3d at 16.  Plaintiff can succeed here by showing that the correct process "would have made a difference."  Recupero v. New Eng. Tel. & Tel. Co., 118 F.3d 820, 825 (1st Cir. 1997).  The Court finds Triple-S' tardy delivery of the documents, prejudiced Plaintiff enough, because the 180-day period elapsed before she received and was able to review the documents, and therefore perfect her appeal.[9]  See Gross v. Sun Life Assur. Co. of Canada, 763 F.3d 73, 75 (1st Cir. 2014).  Plaintiff was unable to perfect her appeal because she did not have any of the documents that Triple-S used to reach its determination.  Triple-S' decision to wait three months to furnish these documents curtailed Plaintiff's right to meaningfully participate in this process.

A remand allows the "plan administrators to make the first determination as to the availability of benefits, [it] may be appropriate in some, or even many, cases."  See Glista v. Unum Life Ins. Co. of America, 378 F.3d 113, 132 (1st Cir. 2004).  A remand is particularly appropriate in this case.  Thus, the Court orders a **REMAND** to Triple-S to administratively review Plaintiff's LTD benefits claim. The Court makes no determination as to Plaintiff's claim that Triple-S acted arbitrarily and capriciously in denying his benefits.

iii.  Attorney's Fees

Plaintiff seeks attorney's fees against Banco Popular and Triple-S.  (See Docket Nos. 68 and 69.)  Under ERISA, this Court "in its discretion may allow a reasonable attorney's fee and costs of action to either party" in a benefits proceeding.  29 U.S.C. § 1132(g)(1).  The Supreme Court has declined to decide "whether a remand order, without more, constitutes 'some success on the merits' sufficient to make a party eligible for attorney's fees under § 1132(g)(1)."  Hardt v.

---

[9]  See also supra IV(B)(i)(2), where the Court rebuts Triple-S' argument that the delay caused Plaintiff no prejudice.

Civil No. 15-1347 (GAG)

Reliance Standard Life Ins. Co., 560 U.S. 242, 256 (2010).  The First Circuit is of the opinion that a remand can allow for an award of attorney's fees.  Gross, 763 F.3d at 83.  However, the moving party must first establish a five-factor test to determine whether a moving party can establish that it is entitled to receive attorney's fees.  Id. (citing Cottrill v. Sparrow, Johnson & Ursillo, Inc., 100 F.3d 220, 225 (1st Cir.1996)).  The Court must look at (1) the degree of culpability or bad faith attributable to the losing party; (2) the depth of the losing party's pocket, i.e., his or her capacity to pay an award; (3) the extent (if at all) to which such an award would deter other persons acting under similar circumstances; (4) the benefit (if any) that the successful suit confers on plan participants or beneficiaries generally; and (5) the relative merit of the parties' positions.  Id. Considering all of these factors, and the procedural and factual history of this case, the Court finds an award of attorney's fees is not appropriate.

**V.     Conclusion**

        For the above-stated reasons, the Court hereby **GRANTS** Banco Popular's Motion for Summary Judgment at Docket No. 56, **DENIES** Triple-S' Motion for Summary Judgment at Docket No. 58, **DENIES** Plaintiff's cross-motion for summary judgment at Docket No. 69, and finds as **MOOT** Plaintiff's cross-motion for summary judgment at Docket No. 68.  The Court orders a **REMAND** to Triple-S for further proceedings consistent with this opinion.

        **SO ORDERED.**

In San Juan, Puerto Rico this 19th day of August, 2016.

                                        *s/ Gustavo A. Gelpí*
                                        GUSTAVO A. GELPI
                                        United States District Judge